### HERRINGTON v. MARTINEZ et al.

#### No. 1610.

District Court, S. D. California, Central Division.

June 24, 1942.

Armond M. Jewell and Willedd Andrews, both of Los Angeles, Cal., for plaintiff.

Vincent & Eaton, and Eldred L. Eaton, all of Whittier, Cal., for defendants.

J. F. T. O'CONNOR, District Judge.

A pre-trial in the above entitled matter was had and the parties agreed that certain legal questions were determinative of the issue. Briefs were filed by the parties.

This is an action to quiet title to certain parcels of land and mining claims, known as the "Liberty Group", all of which are situated in San Bernardino County, California. The litigation is exclusively between the plaintiff herein and the defendants, Martinez and Becker. The pertinent facts leading up to the issue involved are: All of the claims in the "Liberty Group" were located by the defendant, Walter Becker, and he posted notices of location on each of the claims, erected monuments to mark the boundaries of each claim, and filed notice of location of each claim for record in the office of the County Recorder of San Bernardino County, and did all of this prior to the year 1934, and prior, in point of time, to the plaintiff and cross-defendant, E. H. Herrington, locating the claims. Subsequent to the location of the mining claims comprising the "Liberty Group", and prior to the commencement of this action by the plaintiff, the defendant, Walter Becker, did convey all of his right, title and interest in the said "Liberty Group" of bentonite mining claims to the defendant, Luis Martinez, which said conveyance is of record in the office of the County Recorder of San Bernardino County, California, and at the time of the commencement of this action, the defendant, Walter Becker, had no interest, and now has no interest, in said "Liberty Group" of bentonite mining claims and disclaims all interest therein. Subsequent to the location by Becker, and after 1935, the plaintiff filed a location on the same mining claims.

The plaintiff asserts a priority of ownership therein, predicated upon averments in his complaint wherein he alleges in substance, that at the time the defendant, Becker, had perfected his location on the "Liberty Group" mining claims, he was neither a citizen of the United States of America, nor had he declared his intention

of becoming a citizen thereof, but was and is now a citizen of Germany. Plaintiff alleges further that the defendant, Martinez, at the time of the conveyance to him by Becker, of his entire interest in said "Liberty Group" mining claims, was neither a citizen of the United States nor had he filed a declaration of his intention to become one, but was then a citizen of Spain. However, the pleadings indicate that within several years last past, and prior to commencement of this action, the defendant, Martinez, has become a citizen of the United States and also the exclusive owner of the "Liberty Group" mining claims.

The plaintiff contends:

1. That by reason of the alien status of the defendants, Becker and Martinez, they were disqualified from locating the mining claims in question, a fortiori; their subsequent ownership was invalid ab initio.

2. The later location by the plaintiff was entitled to priority over that of the defendants in view of the latter's disqualification to locate.

3. The plaintiff, as an individual, has a right to question the validity of the location by an alien of mineral lands owned by the United States on the ground of alienage.

A solution of the last contention is determinative of the first two.

Title 30, U.S.C.A. § 22, provides: "All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law * * *." Section 1426 of the California Civil Code contains a substantially similar provision.

For an individual to avail himself of the right to locate a mining claim under one of the above statutes, citizenship of the United States, or a declaration of intention to become such is a prerequisite. The judicial construction of these sections by the United States Supreme Court and the Supreme Court of California indicates that such qualifications are merely directory as against everyone except the sovereign authority of the government concerned. The leading case of Manuel v. Wulff, 152 U.S. 505, 14 S.Ct. 651, 38 L.Ed. 532, is frequently cited as authority for the

proposition of law that the ownership of a mining claim by an alien is subject to question in regard to his citizenship by the government alone. Therein a mining claim was conveyed by deed to an alien by a qualified locator. Unquestionable title was procured by the grantor and the only question was whether such title devolved upon the alien grantee. The grantee's title was voidable and not void, the court held. Under the present facts, the defendant, Becker, an alien, was the original locator, and aside from the question of his right to the mining claims in dispute by reason of his alienage, consummation of title therein was duly secured.

May not the principle enunciated in Manuel v. Wulff apply to the present case? This question has been answered in the affirmative by the weight of authority. In McKinley Creek Mining Co. v. Alaska United Mining Co., 183 U.S. 563, at pages 571, 572, 22 S.Ct. 84, at page 87, 46 L.Ed. 331, after discussing the case of Manuel v. Wulff, the court said: "The meaning of Manuel v. Wulff, is that the location by an alien and all of the rights following from such location are voidable, not void, and are free from attack by anyone except the government." The highest court sustained the validity of a conveyance made by an alien, and reversed the Supreme Court of Montana. Ginaca v. Peterson, 9 Cir., 262 F. 904. The underlying premise upon which the above principle is predicated, commenced from the early evolution of an alien's right to own property. In Doe ex dem. Governeur's Heirs v. Robertson, 24 U.S. 332, 353, 11 Wheat. 332, 353, 6 L.Ed. 488, Associate Justice Johnson states: "That an alien can take by deed, and can hold until office found, must now be regarded as a positive rule of law, so well established, that the reason of the rule is little more than a subject for the antiquary. It no doubt owes its present authority, if not its origin, to a regard to the peace of society, and a desire to protect the individual from arbitrary aggression. Hence, it is usually said, that it has regard to the solemnity of the livery of seizen, which ought not to be divested without some corresponding solemnity." The legal status of a title to a mining claim located and held by an alien who has not declared his intention to become a citizen is voidable and not void, subject to being divested only by the government. 1 Lindley on Mines, § 233, page 513; 17 Cal.Jur. § 15, p. 297; 40

C.J., § 145, p. 771. Cases which are distinguishable from the principal case and upon which the plaintiff relies to sustain his position are instances where, on adverse claim to an application for a patent to a mining claim, the objection, that the locators through whom the persons urging the adverse claim derive their interest were aliens, is properly made; it being in effect made on behalf of the government. In Lohmann v. Helmer, C.C., 104 F. 178, 181, although involving the rights of an alien to inherit a mining claim and to set aside a collusive conveyance, the court discusses and reconciles, among others, several of the cases cited by the plaintiff. Therein it was stated: " 'There can be no question, under the provisions of section 2319 of the Revised Statutes [30 U.S.C.A. § 22] that, when application is made for the issuance of evidence of title to mining property, it is necessary to show that the applicant is a citizen of the United States, or has declared his intention to become such, before a conveyance of title can be properly issued; and therefore, as was held by the supreme court in the case just cited (O'Reilly v. Campbell, 116 U.S. 418, 6 S.Ct. 421, 29 L.Ed. 669), if a party is seeking to procure the title to mining property from the United States, if taken at the proper time, the objection of alienage would prevent the acquirement of title, and such objection may be made by any one adversely interested. In such cases the sovereign is a party in fact to the proceeding, which is a direct one, for the procurement of title; and the objection of alienage, no matter by whom suggested, is based solely upon the right of the government to interpose the fact of alienage as a bar to procuring or holding an interest in realty.' The pith of the matter is in the statement that, when the case is brought in support of an application in the land department for the issuance of evidence of title to mining property, the sovereign is in fact a party to the proceeding, which is a direct one, for the procurement of title, and the question of the alienage is therefore necessarily presented, and the necessary qualification prescribed by the statute to entitle the party to hold must appear. It is, in effect, as was the case of Lee Doon v. Tesh [68 Cal. 43, 6 P. 97, 8 P. 621], a proceeding against the government to acquire title, the suit being to obtain a judgment upon which the plaintiff is entitled to his patent from the land office, as a conclusive determination of his right there-

to. This question is decided in the case of Manuel v. Wulff, 152 U.S. 510, 14 S.Ct. 653, 38 L.Ed. 534, where the court, among other things says: 'The objection here rests, however, on the assumption that congress has not intended to confer any estate in respect of claims of this character because the right of purchase and the right of possession are indivisible, and the validity of the location is destroyed on the transfer of the claim to a person not authorized to keep the location alive. Tibbitts v. Ah Tong, 4 Mont. 536, 2 P. 759. Of course, the same qualification required in those who may purchase is required as to those who may possess, but that, in our judgment, does not render possessory rights any the less property susceptible of distinct ownership, nor involve the consequence that their transfer to unqualified persons would operate a forfeiture eo instanti as for a violation of a continuing condition precedent, so that the removal of the disqualification would not cure the defect. If it could be properly held that the qualification of his grantee should be regarded as at all a condition annexed to the ownership of the qualified locator, such condition would be a condition subsequent, and governed by the rule laid down in Schulenberg v. Harriman, 21 Wall. 44, 22 L.Ed. 551.' " An examination of the pleadings, here, indicates that the position of the defendant, Martinez, is not subject to attack with reference to his ownership of the mining claims. The controversy did not concern his right to possession by virtue of an application for the issuance of evidence of title to mining property from a sovereign power—but is a defense to an attack by the plaintiff on the defendant's prior location, possession and operation of the mining claims in question. The plaintiff's stand is inconsistent with the authorities heretofore cited and therefore cannot be sustained.

■■ If, in fact, the defendant subsequently became a citizen of the United States (as averred in the answer), this would cure all defects to his ownership in the mining claims, under the following rule: "Where an alien who has located or acquired a mining claim on public lands subsequently becomes a citizen or declares his intention to become such, before any rights have intervened, such declaration operates by relation to the date of location and renders his claim valid from that time; upon such declaration he is entitled to the

benefit of work previously done and of a record previously made by him in locating a claim." 40 C.J., § 149, p. 772.

The plaintiff concedes in paragraph three of his complaint, on information and belief, that the defendant, Martinez, had filed his declaration of intention to become a citizen of the United States within twelve months last past.

A further defense interposed by the defendants is that the same cause of action, involving the same property and the same parties, was fully tried and heard in the Superior Court of the State of California in and for the County of San Bernardino, and numbered 43,579, and the court rendered judgment in favor of the defendants and cross-complainants, Luis Martinez and Walter Becker, and against the plaintiff and cross-defendant, E. H. Herrington, and judgment was entered on the 26th of August, 1940, in Judgment Book 81, at page 186, in the office of the clerk of said court, and judgment is final.

In view of the holding of this court, it is not necessary to this decision to re-examine this question. Flanigan et al. v. Security-First National Bank et al., D.C., 41 F.Supp. 77.

Judgment for the defendants.