FILED
United States Court of Appeals
Tenth Circuit

July 25, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALFRED PECHA, by and through Patty
Pecha-Weber, Next Friend and attorney-in-fact,

      Plaintiff - Appellant,

v.

ED LAKE, Director of Oklahoma
Department of Human Services; JOEL
NICO GOMEZ, Director of Oklahoma
Health Care Authority,

      Defendants - Appellees.

No. 16-6143

_____

**PUBLISHED CONCURRENCE**
_____

**HARTZ,** Circuit Judge, concurring:

      In its unpublished opinion, *Pecha v. Lake*, No. 16-6143 (10th Cir. July 25, 2017),

the panel majority fails to follow the lead of a prior panel of this court and correct the

most harmless of technical errors—failure to substitute the estate of a decedent as the

party before us. It then somehow manages to handle this appeal as if a deceased person

could be a party, but not with respect to some claims (I am not sure what they are) that

his estate could raise—thereby avoiding a core argument addressed by the parties and

providing no guidance to future litigants on an important issue that can be easily

resolved. In this concurrence I will discuss the procedural background of the case, the

technical errors, the proper way to deal with those errors, and why the claim must nevertheless be dismissed as moot because of the limitations imposed on the federal district court by the Eleventh Amendment.

The original complaint was filed on behalf of 97-year-old Alfred Pecha by his niece, Patty Pecha-Weber, acting as next friend and attorney-in-fact (under a power of attorney). The complaint claimed that the state-official defendants had unlawfully refused to determine that Mr. Pecha was eligible for Medicaid benefits. Among other things, it sought a declaratory judgment and an injunction ordering the defendants to cease denying coverage and ordering that they certify him as eligible for coverage from the date of his requested eligibility and "pay Medicaid benefits accordingly." Aplt. App., Vol. I at 14. The defendants moved to dismiss the complaint on several grounds, including sovereign immunity under the Eleventh Amendment. They argued that the Eleventh Amendment prohibited the federal court from issuing a declaratory judgment or ordering payment of any past Medicaid benefits. The district court granted the motion as to the declaratory judgment but ruled that if the court granted an injunction ordering the defendants to certify Mr. Pecha as eligible for Medicaid benefits, the Eleventh Amendment would not prohibit extending three months of pre-*injunction* benefits, as provided in 42 U.S.C. § 1396a(a)(34) (providing for three months of pre-*application* eligibility for benefits in certain circumstances).

Unfortunately, Mr. Pecha died during the litigation. The defendants then filed a Suggestion of Mootness and Motion to Dismiss because of his death. In response, Ms. Pecha-Weber, now acting in the capacity of personal representative of Mr. Pecha's estate

2

(she attached the state-court order naming her as personal representative), filed a motion for substitution of parties (replacing Mr. Pecha by his estate) under Fed. R. Civ. P. 25. She also argued against the defendants' suggestion of mootness, contending that if the court granted the injunction requiring defendants to certify Mr. Pecha's Medicaid eligibility, "Pecha's estate still [would have] the ability to recover Medicaid benefits back to their application date since they would be ancillary to and in furtherance of [the injunction]." Aplt. App. Vol. III at 450. The defendants objected to the substitution of the estate as a party, essentially on the ground that the estate's claim was mooted, at least in federal court, by Mr. Pecha's death. They argued that the Eleventh Amendment barred the federal court from granting any ancillary relief (such as the payment of past benefits) once Mr. Pecha's death mooted any claim for prospective relief.

The first technical error was that the district court did not grant the motion to substitute the estate as the plaintiff. It did not address the motion to substitute at all, but it granted the defendants' motion to dismiss, in effect denying the motion to substitute. The court may have thought that substitution of parties was unnecessary because the case was moot anyway. Without substitution, however, there would be no proper plaintiff to take an appeal challenging the district court's mootness ruling. The failure to grant the motion to substitute was an undeniable abuse of discretion. The merits of the claim is not a proper consideration in resolving such a motion. *See* 7C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, A. Benjamin Spencer & Adam N. Steinman, Federal Practice and Procedure § 1956, 691 (3d ed. 2017) ("Wright & Miller") ("The court will not resolve the merits of the controversy in passing on a motion for

3

substitution."). And denial of a timely motion to substitute, as in this case, can be justified only in extreme circumstances. "'[I]t is difficult to imagine a case where discretion might properly be exercised to deny a motion to substitute for a deceased plaintiff made within the rule's time limits.'" 6 James Wm. Moore et al., Moore's Federal Practice §25.12[4] (3d ed. 2017) (quoting *Saylor v. Bastedo*, 623 F.2d 230, 237 (2d Cir. 1980)). As stated in Wright & Miller, "There appears to be only one reported case under [the 1963 amendment to Rule 25(a)(1)] in which substitution has been denied when the motion was made within the 90-day period [after service of a statement of death]," 7C Wright & Miller § 1955 at 686; and in that case the party had been tardy in many respects, including in serving a statement of death, *see Ashley v. Ill. Cent. Gulf R.R. Co.*, 98 F.R.D. 722, 724 (S.D. Miss. 1983).

The second technical error was the failure of counsel for Ms. Pecha-Weber (as personal representative of the estate) to appeal the denial of the motion to substitute. This likely was an oversight. Counsel began oral argument in this court by stating that he was representing Mr. Pecha and his estate. The failure to substitute parties was then raised by the panel during the argument. The oversight had not been noted in the defendants' pleadings on appeal. They did not rely in their briefing on the absence of the substitution of parties. As set forth in the following footnote, the defendants' 20-page brief repeatedly argued as if the estate were a party on appeal.[1]

---

[1] "The District Court granted Defendants' motion [to dismiss for mootness], holding that *Mr. Pecha's estate's sole interest*—the award of ancillary monetary relief in the form

The proper way for this court to deal with the technical errors is simple and straightforward. We should sua sponte substitute Mr. Pecha's estate as the plaintiff-appellant. That is what this court did in *Copier v. Smith & Wesson Corp.*, 138 F.3d 833, 834 n.1, 835 (10th Cir. 1998). Plaintiff's counsel in that case had not moved to substitute parties in the district court (the plaintiff died during district-court proceedings) or on

of a retroactive payment of back benefits—could not be awarded in the absence of a viable claim for prospective injunctive relief." Aplee. Br. at 3 (emphasis added).

"While *Mr. Pecha's estate* may have appropriate recourse in the Oklahoma state courts, in the wake of Mr. Pecha's death, *it cannot seek in a federal court* the retroactive payment of benefits it believes may be owed without running afoul of the Eleventh Amendment bar." *Id*. at 5 (emphasis added).

"Simply put, Mr. Pecha's death moots his claims for prospective injunctive relief. As a result, *his estate's interest in the retroactive payment of past benefits* ancillary to the entry of prospective injunctive relief cannot be awarded consistent with the Eleventh Amendment." Id. (emphasis added).

"Instead, *his estate's only remaining interest* is in the award of ancillary relief in the form of a retroactive payment of past benefits, which cannot be ordered without running afoul of the Eleventh Amendment." *Id*. at 9 (emphasis added).

"While Oklahoma state law may shed light on whether *Mr. Pecha's estate may or may not have an action in state court* in the wake of Mr. Pecha's death, it is not determinative of Eleventh Amendment limitations on the District Court to grant retroactive relief in this case." *Id*. at 10–11 n.9 (emphasis added).

"Without the possibility of prospective relief, *Mr. Pecha's estate's remaining interest in this litigation* is indistinguishable from a claim for retroactive monetary relief—i.e., damages—and is barred by the Eleventh Amendment." *Id*. at 11 (emphasis added).

"Because *Mr. Pecha's estate's only interest at this stage* is in the retroactive award of past Medicaid benefits, and because such relief must be tied to an award of prospective injunctive relief that can no longer be granted in this case, the District Court properly dismissed the Amended Complaint." *Id*. (emphasis added).

"Only if this Court first decides that the case was improperly dismissed and remands the case to the District Court, and if the District Court then finds in Mr. Pecha's favor on the issue of liability, and if the District Court *then enters an order compelling DHS and OHCA to pay Mr. Pecha's estate retroactive benefits*, will the issue be one ripe for consideration by this Court on appeal." *Id*. at 13–14 (emphasis added) (emphasis in original omitted).

5

appeal. The equities here are much more favorable to Mr. Pecha's estate, because it did everything it should have in district court, and the matter should have been properly dealt with there. Our substitution of parties would create zero unfair prejudice to the defendants.

Instead of proceeding in that manner, the majority opinion "conduct[s] [its] analysis as though Mr. Pecha were the sole plaintiff before us." O&J at 5. It notes that the defendants have not questioned Ms. Pecha-Weber's authority to proceed as the attorney-in-fact of Mr. Pecha. I am confused by what that means, because the majority does not explain how a deceased person can be represented by counsel or can be a party and, if so, what sort of relief can be granted to a deceased person (as opposed to the decedent's estate). In particular, the majority opinion states that it "will not ruminate or opine on whether the outcome would have been different if Mr. Pecha's estate (with Ms. Pecha-Weber as personal representative) was the plaintiff-appellant." O&J at 6 n.4. But it does not suggest what might be different if the estate were the appellant. We are just left with a hint that somehow the result might change if, in future cases, there was a substitution of parties.

As support for proceeding as it does, the majority cites the Second Circuit opinion in *Bush v. Remington Rand*, 213 F.2d 456 (2d Cir. 1954). The majority reads that opinion as "concluding that 'the defendant, by its long delay in raising the issue, had waived its right to object' to failure to substitute in the district court a proper party-plaintiff upon plaintiff's death." O&J at 5 (quoting *Bush*, 213 F.2d at 464). The majority's statement is essentially correct. But it ignores what happened in that case as

6

the result of the waiver. The defendant-appellant had sought to dismiss the claims against it because the estate had not been substituted for the decedent within the two-year time limit of the then-current version of Rule 25. *See Bush*, 213 F.2d at 463. What was waived was the right to obtain a dismissal. The waiver did not lead the *Bush* court to somehow treat the decedent as a party, which is what the majority does here. Rather, *Bush* ruled that as a result of the waiver, the district court had proceeded properly by, among other things, adding the administratrix of the estate as a party. *See id.* at 464. The circuit court then resolved the case just as if the proper parties had been substituted all along. We should do the same.

In contrast to the length of the above preliminary material, the merits of the mootness issue can be dealt with briefly. "In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009) (brackets, ellipsis, and internal quotation marks omitted); *see also Phelps v. Hamilton*, 122 F.3d 885, 891 (10th Cir. 1997) ("inability to grant effective relief renders . . . issue moot"). Appellant concedes that no future Medicaid benefits can be due. But she asserts that the case is not moot because of the prospect of receiving past benefits, which would be relief ancillary to a court order requiring that Mr. Pecha's Medicaid application be approved.

If this proceeding were in state court, this argument might well be correct. In federal court, however, an award of past benefits is barred by the Eleventh Amendment absent any continuing violation of federal law justifying injunctive relief. The doctrine is

7

explained in *Green v. Mansour*, 474 U.S. 64 (1985), where the Supreme Court considered two consolidated class actions challenging Michigan's denial of benefits under the federal Aid to Families With Dependent Children (AFDC) program. One suit complained that the State was not deducting child-care expenses in computing a potential beneficiary's income. The other complained that the State included stepparent income in the computation. After the suits were brought, federal law was changed to allow deductions for child-care expenses and to require inclusion of stepparent income. *See id.* at 66–67. The State thereafter clearly complied with federal law, so the district court vacated its preliminary injunction. It then dismissed the cases as moot although the plaintiffs had pending claims (1) for declarations that Michigan officials had improperly denied benefits in the past and (2) for notice relief, requiring state officials to provide notices to AFDC applicants informing them that state administrative procedures were available to determine whether they were eligible for past benefits. *See id*. The Supreme Court held that the dismissal was correct.

The Court noted that since *Ex parte Young*, 209 U.S. 123 (1908), it had "held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." 474 U.S. at 68. On the other hand, retrospective relief is not permissible. *See id.* The Court recognized that it had permitted declaratory relief complementing a permanent injunction against current violations of federal law; but in that circumstance the declaratory judgment had no legal effect beyond that of the injunction. *See id.* at 69–70 & n.1. Absent any ground for a continuing injunction, however, a declaratory judgment would be barred by the

8

Constitution. The Court explained that issuing a declaratory judgment would be tantamount to granting retrospective relief because its sole purpose would be to bind a state court under preclusion principles:

> There is a dispute about the lawfulness of respondent's past actions, but the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved in favor of petitioners. *We think that the award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court*, the latter kinds of relief being of course prohibited by the Eleventh Amendment. . . . [A] declaratory judgment is not available when the result would be a partial "end run" around our decision [barring a federal district court from ordering retroactive benefits].

*Id.* at 73 (emphasis added).[2]

Although the issue in our case is not the propriety of a declaratory judgment, the governing doctrine is clear. I see no way that the grant of any relief here could avoid the prohibition of *Green.* Because Mr. Pecha has died there could be no continuing violation of federal law with respect to his benefits. If, as Appellant seems to argue, the continuing refusal to pay past benefits constitutes a "continuing violation" that can be corrected, then the Eleventh Amendment bar on retrospective relief would be an illusion. Every failure to pay retrospective damages could be characterized as a continuing failure to do what is

---

[2]  Notice relief was also unavailable. The Court acknowledged that "a request for a limited notice order will escape the Eleventh Amendment bar if the notice is ancillary to the grant of some other appropriate relief that can be 'noticed.'" *Id.* at 71. But in that case there was "no continuing violation of federal law to enjoin," so "an injunction [was] not available." *Id.* "Therefore, notice [could not] be justified as a mere case-management device that is ancillary to a judgment awarding valid prospective relief." *Id.*

right. The injunction sought here—requiring the defendants to certify a deceased man as eligible for benefits—can have no effect on future benefits. What is desired by an order requiring the defendants to certify Mr. Pecha's Medicaid eligibility is, in essence, a federal-court judgment that "might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed." *Id.* But that is barred by the Eleventh Amendment because it "would have much the same effect as a full-fledged award of damages or restitution by the federal court." *Id.*; *see Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) ("[W]hen the requested relief is akin to a retrospective damages award, *Ex Parte Young* is inapplicable and the Eleventh Amendment prohibits the federal suit.").

Thus, even if Mr. Pecha's estate is substituted as the plaintiff, no relief is available in federal court (regardless of whether Mr. Pecha was Medicaid eligible) so the case is moot. I therefore concur in the result.

Unfortunately, the majority opinion is not being published. I would think that it merits publication under 10 Cir. R. 36.2 because the manner of disposition of this case is apparently unprecedented.